IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

F. ANITA CHAVEZ,

    Plaintiff,

vs.                                      Civ. No. 98-1422 BB/DJS

**KENNETH S. APFEL,**
**Commissioner of Social Security,**

    Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

    1.    Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits. Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this matter for a rehearing. The Court will review the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. Williams

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

v. Bowen, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2. Plaintiff applied for Supplemental Security Income (SSI) benefits on November 2, 1992 alleging a disability due to diabetes, depression and fatigue. Tr. 31-33, 300. The Administrative Law Judge (ALJ) found that Plaintiff was not disabled. Tr. 16. The Appeals Council denied Plaintiff's request for review. Tr. 3-4. On appeal the district court remanded with instructions that the Commission conduct a legally correct credibility analysis and if that was favorable to the Plaintiff, to obtain vocational testimony regarding the impact of Plaintiff's headaches on her residual functional capacity (RFC). After a second hearing the ALJ denied Plaintiff's application. The Appeals Council denied Plaintiff's request for review. The second decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

3. Plaintiff alleges a disability due to diabetes, depression and fatigue. Tr. 75. Plaintiff was born on October 16, 1956. She graduated from high school and has prior work experience as a waitress. Tr. 66.

**Issues**

4. Plaintiff alleges the ALJ made two errors. Specifically Plaintiff claims that: (1) the ALJ failed to follow the federal

court mandate; and (2) the ALJ violated the doctrine of law of the case.

**The Standard of Review**

5. The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence. Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Id. It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld. However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied. Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6. The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work. Once that showing is made, the burden shifts to the Commissioner to show: (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific

types of jobs exist in significant numbers in the economy.  <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981); <u>Salas v. Califano</u>, 612 F.2d 480, 482-83 (10th Cir. 1979); <u>Gardner v. Brian</u>, 369 F.2d 443, 446-47 (10th Cir. 1966).

  7. To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

  8. Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt.

P, App. 2.  These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies.  20 C.F.R. §404.1566(d).  This aids the Commissioner in determining what specific job types exist in the national economy for the claimant.  To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity.  20 C.F.R. §§404.1545, 404.1563-.1565.  These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled.  20 C.F.R. §404.1569.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9. Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination.  Id.  In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id.  If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir.

1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10. The mandate of the district court was to "(1) conduct a credibility analysis according to the correct legal standards and then, should the ALJ make a determination of credibility, (2) to obtain expert vocational testimony to determine the impact of plaintiff's headaches on her Residual Functional Capacity." Tr. 307. What was of concern to the district court was that the ALJ did not clearly explain her basis for determining that Plaintiff's headaches did not affect her RFC. Tr. 305. The ALJ followed this mandate.

11. Clearly the ALJ followed the legal standards required in the analysis of a non-exertional impairment and its affect on Plaintiff's RFC. 20 C.F.R.404.1529 and 416.929; Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987); and Hamilton v. Secretary, 961 F.2d 1495 (10th Cir. 1992. At the hearing the ALJ took extensive testimony from the Plaintiff regarding her medical history and particularity her headaches. Tr. 395. Upon review of her testimony and medical records the ALJ found there was a loose nexus between Plaintiff's overall condition and the presence of headaches. Thus, pursuant to the Luna analysis the ALJ considered both the objective and

6

subjective evidence in the record concerning Plaintiff's headaches. She found upon review of Plaintiff's treating physician notes that Plaintiff was seen "on a regular basis for headaches." Tr. 284. The records also indicate Plaintiff received Demerol injections occasionally for her headaches. Tr. 285. However, as indicated by the ALJ, the plaintiff did not take strong prescription pain medication for her headaches on a regular basis. A review of her pharmacy records show only four prescriptions three of which occurred from September 1994 to December 1994. The records also showed that Midrin alleviated Plaintiff's headaches. Tr. 357. The ALJ then noted that the records do not support Plaintiff's statements that she has to lie down during the day. Treatment notes do not indicate she ever had these limitations. Further, they do not indicate severe headache related problems. The record also indicates that Plaintiff headaches are brought on by significant stress and were not migraine. Tr. 90.

12. Plaintiff saw Dr. Power for a neurological consultation on June 25, 1992. Her neurological examination and CT scan of the head were normal. Tr. 212. He further found that her headaches were from tension. Id. Based on the record as a whole, there is substantial evidence supporting the ALJ's decision.

13. The ALJ also obtained vocational expert testimony. The ALJ asked the vocational expert whether a person who had headaches from time to time could perform other work if she were limited to jobs that are "minimally stressful." Tr. 423. In response the

vocational expert testified that there were unskilled sedentary jobs such as a jewelry assembler and unskilled light jobs such as a laundry sorter. Id. Thus, contrary to Plaintiff's claim, the ALJ sought and relied on the testimony of a vocational expert. Tr. 288.

14. Plaintiff is correct in arguing that the law of the case doctrine applies to administrative agencies on remand. Brachtel v. Apfel, 132 F.3d 417, 420 (8th Cir. 1997). However, the doctrine does not apply in this case because the district court did not make an actual finding regarding Plaintiff's RFC. The district court did not instruct the ALJ to remand to make a decision based on an RFC for sedentary work. Id. Thus, the ALJ did not exceed the scope of the remand order. It is also important to note that the ALJ in the first opinion found that Plaintiff's residual functional capacity was "for at least sedentary work." Tr. 15.

**Recommended Disposition**

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
Don J. Svet
United States Magistrate Judge